**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| TEAM HEALTHCARE/DIAGNOSTIC CORPORATION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:10-CV-1441-BH |
| BLUE CROSS AND BLUE SHIELD OF TEXAS, A DIVISION OF HEALTH CARE SERVICE CORPORATION, | § § § § § | |
| Defendant. | § | Consent Case |

## MEMORANDUM OPINION AND ORDER

Pursuant to the consent of the parties and the order dated January 24, 2011, this case has been transferred for the conduct of all further proceedings and the entry of judgment. Before the Court is Defendant's *Partial Motion to Dismiss Plaintiff's Second Amended Complaint Under Federal Rule of Civil Procedure 12(b)(6) and Brief in Support*, filed October 25, 2011 (doc. 42). Based on the relevant filings and applicable law, the motion is **DENIED**.

## I. BACKGROUND

Plaintiff Team Healthcare/ Diagnostic Corporation (Plaintiff), a non-participating healthcare provider, sues Blue Cross and Blue Shield of Texas (Defendant), a health insurance company, for alleged violations of the Texas Prompt Pay Act (TPPA), common law breach of contract, unjust enrichment, quantum meruit, promissory estoppel, negligent misrepresentation, and breach of contract under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1002 *et seq*. It also seeks declaratory relief under the Declaratory Judgment Act, 29 U.S.C. § 2201.

According to the second amended complaint, Plaintiff is a healthcare provider of mobile

cardiopulmonary diagnostic tests to patients in the Dallas-Fort Worth metroplex. The tests are unique for two reasons: they utilize mobile equipment and therefore can be administered in the physicians' offices, and their predictive accuracy is greater than the stress echo and nuclear study administered in a cardiologist's office. No other healthcare provider in North Texas administers the mobile cardiopulmonary diagnostic test. Defendant is a health insurance company, providing coverage to Texas residents and administering insurance plans covering Plaintiff's patients.

Plaintiff alleges that it administers the test at the request of a primary care physician (PCP) who is either a preferred provider or in the applicable health maintenance organization (HMO). After receiving the request and before administering the test, it obtains a certificate of medical necessity from the physician. It also obtains an assignment of benefits from the patient and verifies the patient's insurance coverage. After the test is administered, the physician submits insurance claims for his or her professional services, while Plaintiff submits insurance claims for its technical services. Since at least 1999, Plaintiff has administered the test to Defendant's insureds, and Defendant has recognized the test as a covered service. Plaintiff has always provided its covered services to Defendant as an out-of-network provider and has never had a provider agreement with Defendant.

Plaintiff claims that from approximately June 2006 to June 2010, it provided specialty medical care or healthcare services to Defendant's insureds at the requests of the insureds' PCPs. The PCPS allegedly requested its services because they were not reasonably available from a preferred provider in the insureds' networks or from a provider in the insured's HMO delivery network. Plaintiff alleges that after providing those services, it timely submitted clean claims to Defendant, but Defendant failed to timely take action on the claims in violation of Tex. Ins. Code §§ 843.338 and 1301.103. Defendant also allegedly verified coverage and benefits for health care services proposed by Plaintiff, but refused

to honor the verifications after Plaintiff provided the services in violation of §§ 843.350 and 1301.133. Defendant further sent letters alleging overpayments and demanding reimbursement from Plaintiff without including the basis and specific reasons for the reimbursements sought, allegedly in violation of §§ 843.350 and 1301.132. Some of the letters allegedly sought reimbursement for more than the amount originally paid while others sought reimbursement on the mistaken belief that Plaintiff's technical services claims were duplicative of professional services claims submitted by the physician. Still others sought reimbursement for a claim that was still allegedly under review.

Plaintiff further claims that Defendant denied properly submitted claims in whole or in part without good cause; required Plaintiff to resubmit claims numerous times before making payment; refused to pay Plaintiff's usual, customary, and reasonable rates on properly submitted claims; refused to pay Plaintiff's properly submitted claims at the correct rate; recovered alleged overpayments without giving written notice of the specific reasons for the recovery of funds; and demanded reimbursements of the alleged overpayments more than 180 days after payment of claims.

Defendant now moves to dismiss Plaintiff's TPPA claims, as well as its claims for negligent misrepresentation, promissory estoppel, quantum meruit, and unjust enrichment, pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## II.  RULE 12(b)(6) STANDARD

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). Under the 12(b)(6) standard, a court

cannot look beyond the pleadings.[1] *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Although "detailed factual allegations" are not necessary, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 129 S. Ct. at 1949 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 129 S. Ct. at 1950–51.

---

[1] In the Rule 12(b)(6) context, pleadings include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

- 4 -

## III.  TPPA CLAIM

Defendant moves to dismiss Plaintiff's TPPA claim, arguing that the TPPA does not apply to a non-participating provider like Plaintiff, to out-of-state insurers like those engaged in the "Blue Card Program," or to self-funded ERISA plans.

The TPPA is codified in chapters 843 and 1301 of the Texas Insurance Code, governing HMOs and preferred provider benefit plans, respectively.  Provisions from both chapters are at issue here and require an HMO or insurer to act on a "clean claim" submitted by a physician, provider, or preferred provider, within a specified deadline, by (1) determining whether the claim is payable, and (2) paying the payable claim or portion of the claim that is payable, or notifying the physician, provider, or preferred provider in writing why a claim will not be fully or partially paid.  *See* Tex. Ins. Code §§ 843.336, 843.338, 1301.101, 1301.103.  The provisions also contain certain requirements with respect to a "verification" by an HMO or insurer to a physician, provider, or preferred provider that the HMO will pay the physician or provider for proposed health care services if the physician or provider renders those services to the patient for whom the services are proposed.  *Id.*, §§ 843.347, 1301.132.  Finally, the provisions specify the conditions in which an HMO or insurer may recover an overpayment to a physician or health care provider.  *Id.*, §§ 843.350, 1301.133.

### A.  Out-of-Network Providers

Defendant first argues that the TPPA provisions do not apply to an out-of-network or non-participating provider such as Plaintiff.

Under TPPA's plain language, the provisions related to prompt payment and verification of medical care apply to out-of -network providers if they provide to an insured: (1) care related to an emergency or its attendant episode of care as required by state or federal law; or (2) specialty or other

- 5 -

medical care or health care services at the request of the insurer or an in-network provider because the services are not reasonable available from a provider within the network. Tex. Ins. Code §§ 843.351; 1301.069. Here, Plaintiff has sufficiently alleged that it is an out-of-network provider who provided specialty or other medical care or health care services at the request of an in-network PCP or preferred provider because the services were not reasonably available from an in-network provider, and therefore, that the provisions of the TPPA relating to prompt payment and verification apply.

It is unclear whether TPPA's overpayment provisions are applicable to an out-of-network provider, however. Defendant does not address the overpayment provision specifically, and generally relies on *Christus Health Gulf Coast v. Aetna, Inc.*, 347 S.W.3d 726 (Tex. App.—Houston [14th Dist.] 2011, pet. filed) to argue that the TPPA does not apply to out-of-network providers. *Christus* was filed in 2002, when the TPPA provisions related to out-of-network providers were not in effect. *See* Tex. Ins. Code §§ 843.351, 1301.069. The *Christus* court did not have to construe the TPPA in light of these provisions. In addition, there were no assertions in *Christus* that the providers were providing specialty services to insureds at the request of in-network providers. Nor were there assertions by the out-of-network providers that they were pursuing their patient's claims through assignment. *See Christus*, 347 S.W.d at 734. There are specific allegations in this case that Defendant's insureds assigned their medical claims and payment rights to Plaintiff by executing assignments of benefits in its favor. Defendant has failed to show that the TPPA does not apply to the factual circumstances presented here as matter of law.

**B. Blue Card Program or Self-Funded ERISA Plans**

Defendant next argues that the TPPA is not applicable to out-of-state insurers such as those engaged in the Blue Card Program or to self-insured ERISA plans. Essentially conceding a dearth of

legal precedent on the issue, Defendant mainly relies on the interpretations by the Texas Department of Insurance and the Technical Advisory Committee on Claims Processing.

Even if Defendant is correct that the TPPA does not apply to out-of-state insurers or to self-funded ERISA plans, a 12(b)(6) motion is not a vehicle for considering the merits of the case but is only meant to test the sufficiency of the pleadings in a complaint. It is well-established that in disposing of such a motion, a court cannot look beyond the pleadings. *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196. Since there are no specific allegations in the second amended complaint that the claims at issue are Blue Card claims or claims under self-funded ERISA plans, Defendant's argument requires the court to look beyond the pleadings to decide the merits of the case – something it is not permitted to do.

Defendant contends that it is only requesting the court to decide the scope of the TPPA – a legal question that can be decided on a 12(b)(6) motion. Given the dearth of legal precedent on the issue and without the proper factual context, however, the court's decision on the scope of the TPPA would not be the resolution of a disputed legal issue, but more akin to an advisory opinion construing a statute to broadly preclude certain claims when the plain language of the statute does not preclude those claims. Defendant's motion to dismiss Plaintiff's TPPA claim at this stage is denied. This is not to say that Defendant may not present evidence of Blue Card or self-funded ERISA claims at a later stage of the proceedings or seek their dismissal through a procedurally proper vehicle.

### IV.  NEGLIGENT MISREPRESENTATION CLAIM

Defendant seeks to dismiss Plaintiff's negligent misrepresentation claim on two grounds: (1) there is no plausible factual basis for key elements in Plaintiff's negligent misrepresentation claim; and (2) the claim is barred by the economic loss rule.

**A. Plausible Factual Basis**

Defendant first argues that Plaintiff has not sufficiently alleged a negligent misrepresentation claim.  A negligent representation claim under Texas law has four elements: (1) the defendant made a representation in the course of his business, or in a transaction in which he had a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391, 395-96 (5th Cir. 2005) (citation omitted); *see also Nazareth Int'l. Inc. v. J.C. Penney Co.*, 287 S.W.3d 452, 460 (Tex. App.—Dallas 2009, pet. denied). Only a misrepresentation of existing fact is actionable as a negligent misrepresentation claim.  *See Byrd v. Chase Home Fin.*, LLC, 2011 WL 5220421, at *4 (N.D. Tex. Oct. 31, 2011) (citing *BCY Water Supply Corp. v. Residential Invs., Inc.*, 170 S.W.3d 596, 603 (Tex. App.—Tyler 2005, pet. denied).

Here, Plaintiff alleges that Defendant verified coverage and benefits for its proposed health care services, but refused to honor those verifications after Plaintiff provided those services. Plaintiff also alleges that Defendant denied properly submitted claims, arguing no coverage after representing that coverage existed.  Plaintiff has alleged sufficient facts to state a claim for relief that is plausible on its face.  Defendant argues that its coverage representations are not actionable because they are future promises and not statements of existing fact. Statements found inactionable under the negligent misrepresentation theory have typically involved overt promises of future acts, however.  *See Mid-Town Surgical Ctr., LLP v. Blue Cross v. Blue Shield of Tex.*, 2012 WL 1252512, at *2 (S.D. Tex. Apr. 11, 2012).  The coverage representations here are not overt promises, but statements of existing

fact. *Id.* Defendant's argument on the plausibility of the negligent representation claim therefore fails.

**B. Economic Loss Rule**

Defendant next argues that the economic loss rule bars the negligent misrepresentation claim. The economic loss rule "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Lamar Homes, Inc. v. Mid–Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007) (citing *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494–95 (Tex. 1991)). Under the rule, "a plaintiff may not bring a claim for negligent misrepresentation unless the plaintiff can establish that he suffered an injury that is distinct, separate, and independent from the economic losses recoverable under a breach of contract claim." *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 664 (Tex. 1998).

Plaintiff alleges that Defendant's misrepresentations concerned insurance coverage and benefits under its contracts with its insureds and resulted in pecuniary loss in the amount of the unpaid claims. Because the alleged injury will not be determined based on whether the unpaid claims were actually covered by the contracts, but on whether or not Defendant made coverage misrepresentations that resulted in justifiable reliance by Plaintiff, the injury alleged is distinct, separate, and independent from economic losses recoverable under its breach of contract claims. Plaintiff might recover under the negligent misrepresentation claim even if it cannot recover under its breach of contract claims. The economic loss rule therefore does not bar its negligent misrepresentation claim, and Defendant's motion to dismiss the claim is denied.

## V.  PROMISSORY ESTOPPEL CLAIM

Defendant next moves for dismissal of Plaintiff's promissory estoppel claim as implausible. It contends that Plaintiff has not provided the factual content or context of the alleged promise and has

failed to allege that injustice can only be avoided by the enforcement of the alleged promised.

Although normally a defensive theory, promissory estoppel is available as a cause of action to a promisee who has reasonably relied to his detriment on an otherwise unenforceable promise. *See Gold Kist, Inc. v. Carr*, 886 S.W.2d 425, 431 (Tex. App.— Eastland 1994, pet. denied); *Kelly v. Rio Grande Computerland Grp.*, 128 S.W.3d 759, 769 (Tex. App.— El Paso 2004, no pet.). Under Texas law, promissory estoppel has four elements: (1) a promise; (2) foreseeability of reliance on the promise by the promisor,(3) "substantial reliance by the promisee to his detriment"; and (4) "a definite finding that injustice can be avoided only by the enforcement of the promise." *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 864 (5th Cir. 1999) (citing *Clardy Mfg. Co. v. Marine Midland Bus. Loans, Inc.*, 88 F.3d 347, 360 (5th Cir. 1996)).

As to its promissory estoppel claim, Plaintiff alleges that Defendant provided verifications of the coverage available to pay Plaintiff for its healthcare services; the verifications constituted promises that benefits were available to pay Plaintiff for its services at the levels stated; Defendant could foresee Plaintiff would rely on the promises by providing medical services to Defendant's insureds; Plaintiff substantially relied upon the promises by providing those services; and injustice can only be avoided by enforcement of the promise. These allegations sufficiently meet the notice pleading requirements of Rule 8(a) to give Defendant fair notice of Plaintiff's promissory estoppel claim and the grounds upon which it rests. *See* Fed. R. Civ. P. 8(a). Plaintiff is not required to plead each and every element of the claim in specific factual detail, as Defendant suggests. Because Plaintiff has pled a facially plausible claim for relief, Defendant's motion to dismiss its promissory estoppel claim is

denied.[2]

## VI. QUANTUM MERUIT CLAIM

Defendant next argues that Plaintiff's quantum meruit claim is implausible because Plaintiff conferred no benefit on Defendant.

Quantum meruit is a theory of recovery based on principles of unjust enrichment. *Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex. 1985). The elements of quantum meruit are: (1) the plaintiff rendered valuable services or materials; (2) the services or materials were rendered to the defendant; (3) the defendant accepted, used, and enjoyed the services or materials; and (4) the circumstances reasonably notified the defendant that the plaintiff expected compensation for the services or materials. *Id.* (quoting *City of Ingleside v. Stewart*, 554 S.W.2d 939, 943 (Tex. Civ. App.—Corpus Christi 1977, writ ref'd n.r.e)). "In Texas, quantum meruit is appropriate only where the plaintiff provides valuable services *specifically* for the defendant, not merely where the services benefitted the defendant." *Eagle Metal Prods., LLC v. Keymark Enters., LLC*, 651 F.Supp.2d 577, 595-96 (N.D. Tex. 2009) (emphasis in original). "To recover in quantum meruit, the plaintiff must show that his efforts were undertaken for the person sought to be charged; it is not enough to merely show that his efforts benefitted the defendant." *Truly v. Austin*, 744 S.W.2d 934, 937 (Tex. 1988).

While it is true that Plaintiff's patients were the immediate beneficiaries of its medical

---

[2] Defendant raises additional grounds for dismissal in its reply brief, arguing that ERISA preempts Plaintiff's promissory estoppel claim as to ERISA plan and that Plaintiff fails to plead any damages recoverable under its promissory estoppel claim. Since Defendant raised these arguments for the first time in its reply briefs, it deprived Plaintiff of the opportunity to respond. These arguments will therefore not be considered. *See Spring Indus., Inc. v. Am. Motorists Ins. Co.*, 137 F.R.D. 238, 239 (N.D. Tex.1991) (Fitzwater, J.) (noting practice of declining to consider arguments raised for the first time in a reply brief because non-movant should be given a fair opportunity to respond to the motion) (citing *Senior Unsecured Creditors' Comm. of First Republic Bank Corp.* v. FDIC, 749 F.Supp. 758, 772 (N.D. Tex.1990)).

services, taking the facts alleged in the light most favorable to Plaintiff, Plaintiff has pled that it undertook its efforts also for Defendant's benefit by having its contractual obligations to its insureds discharged. *See DAC Surgical Partners, P.A. v. United Healthcare Servs., Inc.*, 2011 WL 3841946, at *6 (S.D. Tex. Aug. 30, 2011); *El Paso Health Care Sys., LTD v. Molina Healthcare of New Mecixo, Inc.*, 683 F.Supp. 2d 454, 461-62 (W.D. Tex. Jan 21, 2010); *Fisher v. Blue Cross Blue Shield of Tex.*, 2011 WL 3417097, at *3 (N.D. Tex. Aug. 23, 2011) (adopting findings of Magistrate Judge); *Weiner v. Tex. Health Choice, L.C.*, 2002 WL 441428, at *4 (N.D. Tex. Mar. 20, 2002); *but see Encompass Office Solutions, Inc. v. Ingenix, Inc.*, 775 F.Supp.2d 938, 966 (E.D. Tex. Mar. 31, 2011); *Mid-Town Surgical Ctr.*, 2012 WL 1252512, at *3. Because Plaintiff has stated a facially plausible claim for relief, Defendant's motion to dismiss the quantum meruit claim is denied.[3]

### VII. UNJUST ENRICHMENT CLAIM

Defendant finally argues that Plaintiff's unjust enrichment claim should be dismissed because unjust enrichment is not an independent cause of action. While Defendant is correct that some Texas appellate courts do not recognize unjust enrichment as an independent cause of action, the Texas Supreme Court and the Fifth Circuit have recognized unjust enrichment claims. *See e.g. Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992); *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 870 (Tex. 2007); *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550 (5th Cir. 2010).

Defendant also argues that Plaintiff has failed to plead a benefit to Defendant, or fraud, duress, or the taking of an undue advantage, as required to recover under an unjust enrichment claim. "A

---

[3] For the first time in its reply brief, Defendant argues that ERISA preempts Plaintiff's quantum meruit and unjust enrichment claims with respect to ERISA plans. Since Plaintiff has not had an opportunity to respond, the argument has not been considered. *See Spring Indus.*, 137 F.R.D. at 239.

party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros.*, 832 S.W.2d at 41. Plaintiff alleges that it conferred a benefit on Defendant by providing medical services to Defendant's insureds and that by "wrongfully withholding payment in full and/or in part for such services and materials, Defendant obtained a benefit by the taking of an undue advantage, particularly in light of its established history of paying Plaintiff's claims." These allegations, when viewed in the light most positive to Plaintiff, and when taken in the context of the whole complaint, are sufficient to allege a benefit as well as the taking of an undue advantage, and therefore state a facially plausible claim for relief. Defendant's motion to dismiss Plaintiff's unjust enrichment claim is denied.

## VIII.  CONCLUSION

Defendant's motion to dismiss Plaintiff's second amended complaint is **DENIED**.

**SO ORDERED** on this 7th day of May, 2012.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE